PLUMBERS LOCAL NO. 75, and Richard C. Lansing, Plaintiffs-Respondents,†

v.

John COUGHLIN, Secretary of Department of Industry, Labor & Human Relations, Defendant-Appellant.

Court of Appeals

*No. 89-1155. Oral argument May 16, 1991.—Decided January 23, 1992.*

(Also reported in 481 N.W.2d 297.)

†Petition to review denied.

973

For the defendant-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* former attorney general, *James E. Doyle,* present attorney general, *Michael E. Perino,* assistant attorney general, *Richard Briles Moriarty,* assistant attorney general and orally argued by *Richard Briles Moriarty.*

For the plaintiffs-respondents the cause was submitted on the briefs of *Judith E. Kuhn* of *Plumbers Local 75* and *Matthew R. Robbins* and *John J. Brennan* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.* of Milwaukee and orally argued by *Judith E. Kuhn.*

Brief of amicus curiae submitted on behalf of Plumbing & Mechanical Contractors Association of Milwaukee & Southeastern Wisconsin (PMC) and orally argued by *Thomas W. Godfrey* of *Godfrey, Trump & Hayes* of Milwaukee.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   The Department of Industry, Labor and Human Relations (hereafter "department" or DILHR) administers the Wisconsin Manufactured Building Program which it bases on its administrative

rules mandated by the Manufactured Building Code, secs. 101.70 to 101.77, Stats. The key to the program is the Wisconsin insignia the department issues for manufactured housing[1] which conforms to the Manufactured Building Code. Manufactured housing which bears the Wisconsin insignia may be manufactured, offered for sale and installed in the state on a conforming installation site, regardless of any other ordinance, rule, regulation or requirement. Wisconsin Adm. Code secs. ILHR 20.15(2) and (3), and 50.125. The department appeals from a judgment which effectively forbids the department from issuing insignia for manufactured housing in which the plumbing is installed without complying with sec. 145.06(1)(a) and (2), Stats. We reverse.

## THE ISSUES

The ultimate issue is whether the department may approve manufactured housing for sale and installation in the state, irrespective of sec. 145.06(1)(a) and (2), Stats. Section 145.06(1)(a) provides that "[n]o person

---

[1]In this opinion, "manufactured housing" includes one- and two-family and multifamily manufactured buildings for dwellings and manufactured dwelling components. Section 101.71(6), Stats., defines "manufactured building" as follows:

(a) "Manufactured building" means any structure or component thereof which is intended for use as a dwelling and:

1. Is of closed construction and fabricated or assembled on-site or off-site in manufacturing facilities for installation, connection, or assembly and installation, at the building site; or

2. Is a building of open construction which is made or assembled in manufacturing facilities away from the building site for installation, connection, or assembly and installation, on the building site and for which certification is sought by the manufacturer.

(b) "Manufactured building" does not mean any manufactured home or mobile home under s. 101.91 or any building of open construction which is not subject to par. (a)2.

may engage in or work at plumbing in the state unless licensed to do so by the department . . .." Section 145.06(2) provides that "[n]o person shall install plumbing unless at all times a licensed master plumber is in charge, who shall be responsible for proper installation . . .."

The plaintiffs-respondents, Plumbers Local No. 75, and a Wisconsin-licensed journeyman plumber ("Plumbers"), contend that nothing in the department's administrative rules or the Manufactured Building Code makes sec. 145.06(1)(a) and (2), Stats., inapplicable to manufactured housing. However, it is undisputed that the department construes its administrative rules to permit it to issue the Wisconsin insignia for manufactured housing in which the plumbing is installed without complying with sec. 145.06(1)(a) and (2). Therefore, the first sub-issue is whether the department has correctly construed its administrative rules. We conclude that the department's construction of its administrative rules is neither inconsistent with their language nor clearly erroneous. Its interpretation of its administrative rules is therefore entitled to controlling weight.

The Plumbers contend that the department may not enact an administrative rule which conflicts with state law. Therefore, the second sub-issue is whether the Manufactured Building Code authorized the department to adopt its administrative rules which it has interpreted as permitting it to approve, for sale and installation in the state, manufactured housing in which the plumbing has been installed without complying with sec. 145.06(1)(a) and (2), Stats. We conclude that the department's construction of the Manufactured Building Code is reasonable and is consistent with the legislative purpose in enacting the One- and Two-Family Dwelling

Code and the Manufactured Building Code.[2] We therefore defer to that construction.

## I.

## DEPARTMENT'S CONSTRUCTION OF ADMINISTRATIVE RULES

We first examine how the department has construed its administrative rules as to one- and two-family and multifamily manufactured housing. The department has interpreted its administrative rules to authorize it to adopt and administer the Wisconsin Manufactured Building Program. Information Bulletin to Housing Manufacturers and Inspection Agencies, June 1989, DILHR, Safety & Buildings Division (hereafter "Information Bulletin"). The department describes the program as follows:

> The program is intended to apply to manufactured "closed-panel" structures, which would be difficult to inspect after leaving the plant. However, the program may be used for open-panel structures as well. Assuming compliance with code requirements, a Wisconsin Insignia (label) would be affixed to the building. The local inspector at the installation site will accept the labeled building as being basically code-complying, and will normally inspect the on-site and other accessible work only.
>
> *Please note that various state and local trades-licensing requirements do apply to any on-site work*

---

[2]We conclude that the Plumbers have abandoned their argument that the department is bound by the unappealed declaratory judgment in *Plumbers Local No. 75, et al. v. Bellman, et al.*, No. 86–CV–0039, Dane County Circuit Court (Jan. 5, 1987). In any event, we do not have a record sufficient to decide whether the issues before us were litigated and decided in that action.

and that any local building code requirements do apply to on-site work of multi-unit dwellings. [Emphasis added.]

Information Bulletin, *Scope.*

Section 8.b, *Procedures,* provides that "[o]n-site plumbing must be . . . installed by Wisconsin licensed plumbers." Information Bulletin. For in-plant plumbing, however, plans must be submitted to the department's Plumbing Bureau as a Product Approval Application. *Id.* at sec. 8.a. Applying the principle that the expression of one excludes the other, *Teamsters Union Local 695 v. Waukesha County,* 57 Wis. 2d 62, 67, 203 N.W.2d 707, 710 (1973), we conclude that the department has interpreted its rules not to require that in-plant plumbing be installed by Wisconsin-licensed plumbers.

We next consider whether the department's construction of its administrative rules as authorizing it to adopt and administer the Wisconsin Manufactured Building Program is inconsistent with the language of the rules or clearly erroneous. *See Pfeiffer v. Board of Regents,* 110 Wis. 2d 146, 154–55, 328 N.W.2d 279, 283 (1983) (An administrative agency's interpretation of its own regulation is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous).

The rules of administration and enforcement as to one- and two-family housing are contained in the Uniform Dwelling Code, Wis. Adm. Code chs. ILHR 20 to 25.[3] Subchapter V, secs. ILHR 20.12 to 20.17, governs

---

[3]Wisconsin Adm. Code sec. ILHR 20.01 provides:

The purpose of this code is to establish uniform statewide construction standards and inspection procedures for one- and 2-family dwellings and manufactured buildings for dwellings in accordance with the requirements of ss. 101.60 and 101.70, Stats.

the design, manufacture, installation and inspection of one- and two-family manufactured housing.[4]

The administration and enforcement rules on which the department relies to include multifamily manufactured housing in the Manufactured Building Program are contained in Wis. Adm. Code secs. ILHR 50.06(2) and 50.125, of the Commercial Building Code.[5]

Inspection procedures are prescribed in Wis. Adm. Code ch. ILHR 26 and subchapter II, ch. ILHR 81. Wisconsin Adm. Code ch. ILHR 26 establishes the stan-

---

Section ILHR 20.02 (intro) provides:

> The provisions of chs. ILHR 20 to 25 shall apply to the construction and inspection procedures used for all new one- and 2-family dwellings, manufactured buildings for dwellings and newly constructed community-based residential facilities providing care, treatment and services for 3 to 8 unrelated adults.

Section ILHR 20.05(2) provides:

> The provisions of this code shall not apply to residences occupied by 3 or more families living independently or occupied by 2 such families and used also for business purposes.

[4]Wisconsin Adm. Code sec. ILHR 20.12 provides:

> This part [subchapter V] shall govern the design, manufacture, installation and inspection of manufactured dwellings, manufactured building systems and the components of the building systems displaying the Wisconsin insignia.

[5]Wisconsin Adm. Code sec. ILHR 50.06(2) provides:

> Pursuant to s. 101.75(2), Stats., all manufactured multi-family dwellings approved by the department shall be deemed to comply with the requirements of all building ordinances and regulations of any local government except those related to zoning and siting requirements including, but not limited to, building setback, side and rear yard requirements and property line requirements.

Section ILHR 50.125 (intro.) provides:

> A Wisconsin insignia shall be installed on a manufactured multi-family dwelling approved by the department and inspected at the manufacturing plant.

dards and procedures for certification of inspectors and independent inspection agencies for enforcement of the Uniform Dwelling Code and the Commercial Building Code. Section ILHR 26.01.[6] Wisconsin Adm. Code Reg., Dec. 1978, No. 276, eff. Jan. 1, 1979. These procedures apply to one- and two-family and multifamily manufactured housing.

Sections ILHR 81.301 to 81.40, establish the standards and procedures for certification of plumbing inspectors and independent plumbing inspection agencies for enforcement of the state plumbing code for one- and two-family dwellings, including one- and two-family manufactured dwellings. Section ILHR 81.301. Manufacturers of multifamily manufactured housing must contract with the department or an independent inspection agency to conduct in-plant inspections. Sections ILHR 50.18(2), 51.01(71p) and 51.01(79a).[7]

[6] Chapter IND 26 was renumbered ch. ILHR 26 by Wis. Adm. Reg., Feb. 1985, No. 350, eff. March 1, 1985.

[7] Wisconsin Adm. Code sec. ILHR 50.18(2) provides:

> Manufacturers of multi-family dwellings shall contract with the department or an independent inspection agency to conduct in-plant inspections to assure that the manufactured multi-family dwellings are in compliance with the plans approved by the department. All inspections shall be performed by a certified inspector or independent inspection agency.

Section ILHR 51.01(71p) provides:

> Independent inspection agency means any person, firm, association, partnership or corporation, other than a municipal corporation, certified by the department to perform certified inspections under this code.

Section ILHR 51.01(79a) provides:

> Manufactured multi-family dwelling means any structure or component which is intended for use as a multi-family dwelling and for which certification is sought by the manufacturer, and which is of open or closed construction, fabricated or assembled on-site or off-

In order to participate in Wisconsin's Manufactured Building Program, a manufacturer must complete a number of steps based on a national model developed by the National Bureau of Standards, "Model Documents for the Evaluation, Approval, and Inspection of Manufactured Buildings," NBS Building Science Series 87, U.S. Dep't of Commerce (July 1976).[8] Information Bulletin, *Authority*. These documents are incorporated in the Uniform Dwelling Code by sec. ILHR 20.24(3). As listed in the department's Information Bulletin, the steps include: (1) Submitting building plans, specifications and calculations to the department for examination and approval; (2) For in-plant plumbing work, submitting plans to the department's Plumbing Bureau as a Product Approval Application; (3) Submitting a compliance assurance manual[9] to the department for approval; (4) In-plant inspections by the department or a certified inspection agency; and (5) On-site inspections by the local inspections department.

Assuming compliance with code requirements, the manufacturer may affix the Wisconsin insignia to manufactured buildings and building material. Information

site in manufacturing facilities for installation, or assembly and installation at the building site. For purpose of this code, a manufactured multi-family dwelling means 3 or more living units attached together, or 2 or more living units and a business occupancy attached together.

[8]NBS Building Science Series 87 is on file in the offices of the department, the secretary of state, and the revisor of statutes. *See* Wis. Adm. Code sec. ILHR 20.24(intro.).

[9] " 'Compliance assurance program' means the detailed system documentation and methods of assuring that manufactured dwellings and dwelling components are manufactured, stored, transported, assembled, handled and installed in accordance with this [uniform dwelling] code." Wisconsin Adm. Code sec. ILHR 20.07(19). Dwelling components may include plumbing systems. Section ILHR 20.07(9).

Bulletin, *Scope.* The Wisconsin insignia is mandated by sec. 101.73, Stats., which provides in part: "The department shall . . . (7) Issue or recognize an insignia of compliance for dwellings which conform to the manufactured building code." The department may "recognize" the insignia of another state through a reciprocity agreement under sec. 101.74(7), Stats. "All manufactured buildings manufactured, sold for initial use or installed within this state shall display . . . the insignia issued or recognized under ss. 101.73(7) and 101.74(7) . . .." Section 101.75(2), Stats.

The effect of the insignia is stated in Wis. Adm. Code sec. ILHR 20.15 as follows:

> (2) Manufactured dwellings and manufactured building components bearing the Wisconsin insignia are deemed to comply with this [uniform dwelling] code, except as to installation site requirements, *regardless of the provisions of any other* ordinance, rule, regulation or *requirement.* [Emphasis added.]
>
> (3) Manufactured dwellings and components bearing the Wisconsin insignia may be manufactured, offered for sale and shall be entitled to be installed anywhere in Wisconsin where the installation site complies with the other provisions of this [uniform dwelling] code.

Section ILHR 20.15 applies only to one- and two-family manufactured housing. However, the Wisconsin insignia must be placed on department-approved multi-family manufactured housing. Section ILHR 50.125. In administering the Manufactured Building Program, the department gives the same effect to the Wisconsin insignia when attached to multifamily manufactured housing as when it is attached to one- and two-family manufactured housing. The department has construed secs. ILHR 20.15 and 50.125 to make local and state trades-

982

licensing requirements inapplicable to manufactured housing.

The Uniform Dwelling Code requires that one- and two-family manufactured dwellings be provided with plumbing systems in accordance with chs. ILHR 25, and 82 to 84. Section ILHR 25.01. The Wisconsin Manufactured Building Program requires that all plumbing comply with the Wisconsin Plumbing Code (ILHR 81–85). Information Bulletin, *Procedures* sec. 1.c. This requirement extends to multifamily manufactured housing governed by the Commercial Building Code.

█

We conclude that the department's construction of its administrative rules relating to one- and two-family and multifamily manufactured housing as authorizing it to adopt and administer the Wisconsin Manufactured Building Program is neither inconsistent with the language of the rules or clearly erroneous.

## II.

## LEGISLATIVE AUTHORITY

The remaining question is whether the legislature authorized the department to adopt the rules which it has construed to permit it to adopt and administer the Wisconsin Manufactured Building Program. The Plumbers cite sec. 227.10(2), Stats., which provides: "No agency may promulgate a rule which conflicts with state law." In view of this provision, the Plumbers contend that the department's rules relating to manufactured housing must be construed to require that the plumbing in manufactured housing be installed by Wisconsin-licensed plumbers under the supervision of Wisconsin-licensed master plumbers. They argue that the department may administer the Wisconsin Manufactured

Building Program without "repealing" the requirements of sec. 145.06(1)(a) and (2), Stats. The department argues that sec. 145.06(1)(a) and (2) applies only to site-built housing and on-site installation of manufactured housing.

The Plumbers assert that whether the Manufactured Building Code permits the department to adopt administrative rules which make sec. 145.06(1)(a) and (2), Stats., inapplicable to in-plant installation of plumbing in manufactured housing is a legal question of first impression which the department has no expertise to decide. They argue that therefore we should not defer to the department's construction of the Code. "Where a legal question is concerned and there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all." *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990). In this case, however, we give great weight to the department's construction of the Manufactured Building Code. We are presented in this case with the unique circumstance that the department's expertise and experience contributed to the formulation of the legislation which it subsequently was required to interpret. "An agency's interpretation of a statute or regulation which it helped to develop is . . . persuasive evidence of the meaning of the statute or regulation." *Harnischfeger Corp. v. United States EPA,* 515 F. Supp. 1310, 1314 (E.D. Wis. 1981) (citing *Miller v. Youakim,* 440 U.S. 125, 144 (1979)).

The executive secretary of the department was a member of the governor's task force which recommended enactment of the One- and Two-Family Dwelling Code and the Manufactured Building Code. Report of Task Force on Building Codes at i (Sept. 24, 1970), files of

984

Dwelling Code Council, Safety & Buildings Division, DILHR. A representative of the department served on the Plumbing Subcommittee. *Id* at ii. The administrator of the Safety & Buildings Division coordinated the work of the chairpersons of the subcommittees in preparing the Task Force Report. *Id.* at iv.

We conclude that because of these unique circumstances and the department's extensive experience in applying the state plumbing code to manufactured housing, we must give the department's construction of the Manufactured Building Code the highest level of deference courts give to agency interpretations of statutes. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991) (if agency's experience, technical competence and specialized knowledge aid the agency in interpreting and applying statute, its conclusions are entitled to deference).

Since at least 1966, the installation of plumbing in prefabricated and manufactured buildings has been reviewed and approved on a "product approval" basis. Affidavit of James A. Sargent, director, Bureau of Plumbing, DILHR. The administration of the plumbing code was transferred from the Department of Health and Social Services to DILHR effective April 30, 1980. Section 643, ch. 221, Laws of 1979. Thus, the plumbing section of DHSS became a division of DILHR. When the Manufactured Building Code was enacted, sec. 145.025, Stats. (1975) was created to require DHSS to cooperate with DILHR in adopting rules relating to plumbing and establishing qualifications for the certification of persons performing plumbing inspections for manufactured housing. Section 10, ch. 405, Laws of 1975.

In view of this history, we conclude that the administrative practice which DHSS adopted was not interrupted by the transfer of administration of the plumbing code from DHSS to DILHR. The administrative practice of reviewing the installation of plumbing in manufactured housing on a product approval basis is, therefore, long-standing and consistent. "Where a legal question is intertwined with factual determinations or with value or policy determinations or *where the agency's interpretation and application of the law is of long standing,* a court should defer to the agency which has primary responsibility.for determination of fact and policy." *Sauk County v. WERC,* 165 Wis. 2d at 413, 477 N.W.2d at 270 (quoting *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984) (emphasis added)). This is the highest level of deference courts give to agency interpretations of statutes. *Id.* Where this level of deference is appropriate, we will refuse to defer to the agency's interpretation only if it is irrational. *Id.* We conclude that this level of deference is appropriate.

Robert G. DuPont, Product Review and Support Division chief, DILHR, avers that one reason for adopting the administrative practice of reviewing the installation of plumbing in manufactured housing on a product approval basis was to avoid discriminating against Wisconsin manufacturers. DuPont Affidavit, para. 5. The agencies concluded that an out-of-state manufacturer could not be required to employ a Wisconsin-licensed plumber because sec. 145.06(1)(a), Stats., only prohibits a person from working at plumbing "*in the state,*" unless licensed to do so by the department. *Id.* The agencies concluded that to require Wisconsin manufacturers to employ Wisconsin-licensed plumbers when that require-

ment could not be imposed on out-of-state manufacturers would unduly burden Wisconsin businesses. *Id.*

Whether the agencies correctly adopted this administrative practice prior to enactment of the Manufactured Building Code and the administrative rules implementing the Code is no longer important. What is important is that the department brought this long-standing administrative construction and its perception of the law to the deliberations of the governor's Task Force and to the drafting of the Manufactured Building Code and the administrative rules. Therefore, its conclusion that the Code authorized it to adopt administrative rules permitting it to approve manufactured housing for sale and installation in the state, irrespective of the licensing requirements of sec. 145.06(1)(a) and (2), Stats., was an informed construction of the Manufactured Building Code. We will uphold that construction unless it is clearly contrary to the legislative purpose. *DILHR v. LIRC,* 161 Wis. 2d 231, 246, 467 N.W.2d 545, 550 (1991). We conclude that the department's construction is not contrary to the legislative purpose in enacting the Manufactured Building Code.

The Manufactured Building Code was enacted as the second part of Wisconsin's two-part attack on the housing crisis which then existed. Chapter 405, Laws of 1975. The first part was the One- and Two-Family Dwelling Code, secs. 101.60 to 101.66, Stats., which mandated statewide uniformity of building standards. Chapter 404, Laws of 1975. The Codes were enacted to implement the recommendations of the governor's Task Force[10] which found that "Wisconsin is not unique to

---

[10] Bills to implement the Task Force recommendations were introduced in the 1971 and 1973 sessions as well. 1971 A.B. 1480

987

the national housing crisis . . .." Task Force Report at vii. The Task Force recognized that diverse building codes "present[] a formidable barrier to the development of a broadly based building industry. Under such circumstances, it is difficult for any building organization or manufacturer of building products to take advantage of the economics of mass production that have contributed so significantly to other sectors of our economy." Task Force Report at 3.

The Plumbing Subcommittee reported to the Task Force as follows:

> We must recognize the fact that factory-built homes, apartments and commercial buildings are becoming a way of life. We must certify all phases of construction in the factory so that this system will work. This probably will necessitate crossing state lines so that factory products sold in Wisconsin and produced in other states can be approved.

Task Force Report at 54. This concern was echoed in the report of the One- and Two-Family Building Code Subcommittee. *Id.* at 43–46.

The Task Force accepted these recommendations of the subcommittees. It recommended legislation to provide a state-level product acceptance and approval procedure following national consensus standards. Task Force Report at viii. The Task Force stated: "This will mean implementing a procedure of certification of manufactured buildings and building components. Such a procedure should include a system of allowing reciprocal approval with other state governments within the marketing area of the product." *Id.* at ix.

and 1481; 1971 S.B. 889 and 890; 1973 A.B. 1004 and 1005. However, these bills were not enacted.

The Manufactured Building Code and the One- and Two-Family Dwelling Code were not, however, self-executing. Sections 101.62 and 101.72, Stats., created a Dwelling Code Council which was charged with reviewing existing standards and rules for the construction of one- and two-family dwellings and manufactured buildings for dwellings and recommending a Uniform Dwelling Code and a Manufactured Building Code to the department for adoption. The department was required to adopt rules to implement secs. 101.70 to 101.77, Stats. Section 101.73(1) to (6), Stats.

The Dwelling Code Council was a broad-based committee including representatives of building trade labor organizations, building inspectors and manufactured housing representatives. Environmental Impact Statement, *Proposed Uniform Dwelling Code,* Code Development Section, Safety & Buildings Division, DILHR (Jan. 1979), Dwelling Code Council files.

The department held workshops on the proposed Uniform Dwelling Code throughout the state for interested organizations. Chapters IND 20-25, Vol. I, Dwelling Code Council Files. The department solicited and received comments from organizations and affected entities such as the Wisconsin Towns Association, the County Boards Association, the League of Wisconsin Municipalities, the Wisconsin Society of Architects and the Wisconsin Building Inspectors Association. *Id.* The department prepared an environmental impact statement on the Uniform Dwelling Code and held public hearings on its report. *Id.*

On May 24, 1979, the secretary of the department sent the Uniform Dwelling Code to the legislature. Chapters IND. 20-25, Vol. I, DILHR, Dwelling Code Council Files. Each house held hearings on the proposed Uniform Dwelling Code. *Id.* The assembly Committee on

Local Affairs discussed the Code with the Wisconsin Builders Association, municipal organizations and a representative of the Dwelling Code Council. *Id.* The department held public hearings on adoption of the Uniform Dwelling Code in La Crosse, Green Bay, Madison, Milwaukee, Wausau, Platteville and Eau Claire. Wisconsin Adm. Reg., Oct. 1978, No. 274 at 6. The Code was adopted by the department effective June 1, 1980. Wisconsin Adm. Reg., Nov. 1979, No. 287.

Thus, the Uniform Dwelling Code was drafted in cooperation with the department by a council having considerable expertise, was reviewed by interested organizations, presented to the legislature for its review, and subjected to numerous public hearings. No interested organization or individual objected that the Uniform Dwelling Code exceeded the authority delegated by the legislature to the Dwelling Code Council and the department.

The provisions of the Commercial Building Code relating to multifamily manufactured housing were not included in the Uniform Dwelling Code. We have been unable to determine whether such provisions were recommended to the department by the Dwelling Code Council. However, an interdepartmental memo dated May 31, 1979, indicates that housing manufacturers requested that they be permitted to attach the Wisconsin insignia to department-approved multifamily manufactured housing. Chapters IND 20–25, Vol. I, Dwelling Code Council files. The department drafted proposed rules "modeled after the [Manufactured Building Code] [which] blend[] with our current administrative procedures and approvals." *Id.*

The department held two hearings, one in Madison and one in Wausau. The hearing notice stated that the hearings were on "proposed amendments [which] deal

with the administrative procedures required for plan review and certified inspections of manufactured buildings for multi-family (3 or more) dwellings. This program is mandated by Chapter 405, Laws of 1975 . . .." The department's Rule Report advised the legislature as to the reasons for the proposed rules as follows: "Chapter 405, Laws of 1975, mandates the creation of rules related to manufactured buildings for dwellings . . .. The rules are based upon similar rules in the Uniform Dwelling Code for manufactured single family and two family dwellings." Rules Report on Chapter IND 50-64, para. 5, Dwelling Code Council files.

The intensive public and legislative scrutiny given the Uniform Dwelling Code was not given the provisions of the Commercial Building Code relating to multifamily manufactured housing. Apparently such scrutiny was not considered necessary for two reasons. First, the rules affected a "relatively small number of manufactured buildings for housing . . .." Fiscal Estimate on effect of proposed rules (Oct. 16, 1979), DILHR, Dwelling Code Council files. Second, the department already had in place a plan approval function and inspector certification program which the department considered could be modified as needed to administer and enforce the proposed rules. *Id.* Nonetheless, the public and legislative scrutiny of the proposed rules relating to multifamily manufactured housing was adequate to alert the department if the proposed rules were not consistent with the legislative purpose.

In this case, we defer not only to the department's experience, technical competence and specialized knowledge, but to the experience, competence and knowledge of the Dwelling Code Council. We have previously noted that the initial council was a broad-based committee. In carrying out its responsibilities under secs. 101.62 and

101.72, Stats., it was necessary that the council determine the legislature's intent in directing the creation of a One- and Two-Family Dwelling Code and a Manufactured Building Code.[11]

When the highest level of deference is accorded an administrative agency's construction of a statute, we will sustain the agency's construction unless it is irrational or inconsistent with the purposes of the statute. *Sauk County v. WERC,* 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991); *DILHR v. LIRC,* 161 Wis. 2d at 246, 467 N.W.2d at 550. A statute shall be construed to give effect to its leading idea. *State v. Okray Produce Co.,* 132 Wis. 2d 145, 150, 389 N.W.2d 825, 827 (Ct. App. 1986). The Task Force Report makes clear that the leading idea of the One- and Two-Family Dwelling Code and the Manufactured Building Code was to provide quality housing at a reasonable cost to a population "increasing at an alarming rate." Task Force Report at 1; *see also* Task Force Report at 13, 22 and 23. The Task Force concluded that to accomplish that objective, it was necessary to allow manufactured housing manufacturers to take advantage of the economies of mass production. Task Force Report at 3, 7, 10–12. Plainly, the Dwelling Code Council and the department considered that that objective would be frustrated if manufacturers were required to employ Wisconsin-licensed plumbers super-

---

[11]The council continues to oversee the rules and standards for one- and two-family dwellings and manufactured housing. Wisconsin Blue Book (1989–90) at 559. Section 101.72, Stats., provides that, "Upon its own initiative or at the request of the department, the council shall consider and make recommendations to the department pertaining to rules and any other matters related to this [Manufactured Building] subchapter."

vised by Wisconsin-licensed master plumbers on the assembly line.

The Task Force also concluded that the state-level certification procedure should include a system of allowing reciprocal agreements with other states within the manufacturer's marketing area. Task Force Report at ix. Sections 101.60 and 101.70, Stats., provide that the purposes of the One- and Two-Family Dwelling Code and the Manufactured Building Code include "promot[ing] interstate uniformity" in construction standards by authorizing the department to enter into reciprocal agreements with other states. This purpose is implemented in secs. 101.64(7) and 101.74(7), Stats., which permit the department to enter into reciprocal agreements with other states where the standards, laws and rules meet the intent of the Wisconsin legislative codes and administrative rules adopted by the department. It was not unreasonable for the Dwelling Code Council and the department to conclude that making reciprocal agreements with other states would be unlikely, if not impossible, if manufacturers in other states were required to employ Wisconsin-licensed plumbers under the supervision of Wisconsin-licensed master plumbers to install plumbing in manufactured housing. Other states would be likely to retaliate by imposing similar requirements on Wisconsin manufacturers. The free movement of manufactured housing in interstate commerce would be illusory.

If sec. 145.06(1)(a) and (2), Stats., does not have extraterritorial effect ("no person may . . . work at plumbing *in the state*" unless licensed) (emphasis added), as concluded by the department, Wisconsin manufacturers suffer a competitive disadvantage. This is an unreasonable result which the department correctly rejected. *See State v. Pham,* 137 Wis. 2d 31, 34, 403

N.W.2d 35, 36 (1987) (statutes must be construed to avoid unreasonable results).

If sec. 145.06(1)(a) and (2), Stats., is given extraterritorial effect, the result is equally unreasonable. Not only would the legislative purpose to achieve uniformity of standards be frustrated, but the constitutionality of sec. 145.06(1)(a) and (2) would be questioned, as imposing an undue burden on interstate commerce. *See Dean Milk Co. v. City of Madison,* 340 U.S. 349, 354 (1951) (in exercise of its police power, city cannot erect economic barrier against interstate commerce if reasonable nondiscriminatory adequate alternatives are available). We do not have a record adequate for us to declare that sec. 145.06(1)(a) and (2), if applied to prevent the sale in Wisconsin of manufactured housing in which the plumbing has been installed by persons other than Wisconsin-licensed plumbers, imposes an undue burden on interstate commerce. Nonetheless, we have a duty to construe a statute to avoid *potential* constitutional violation. *United States Fire Ins. Co. v. E.D. Wesley Co.,* 105 Wis. 2d 305, 320, 313 N.W.2d 833, 840 (1982). The department has the same duty.

The Dwelling Code Council and the department have construed the Manufactured Building Code to authorize the department to issue or recognize an insignia of compliance which allows the sale and installation in the state of manufactured housing in which the plumbing has been installed by persons who are not licensed under sec. 145.06(1)(a) and (2), Stats. We conclude that that construction is reasonable and is consistent with the legislative purpose in enacting the One- and Two-Family Dwelling Code and the Manufactured Building Code. We therefore defer to that construction.

*By the Court.*—Judgment reversed.

DYKMAN, J. *(dissenting).* This is not a compli-cated case. The issue is whether sec. 145.06, Stats.,[1] applies to the installation of plumbing products in man-ufactured buildings. The Manufactured Building Code does not address this issue.

Since at least 1975, the department has not applied sec. 145.06, Stats., to manufactured housing. Instead, the department reviewed and approved plumbing plans for manufactured buildings on a "product approval" basis. To obtain "product approval," a company submitted specifications for a prefabricated or manufactured build-ing containing plumbing. Once approved, the building could be sold in this state.

The legislature has concluded that to protect the safety of Wisconsin residents, plumbing must be installed under the supervision of persons who have had extensive training in the proper installation of plumbing equipment—Wisconsin licensed master plumbers. *See* sec. 145.06(2), Stats. The legislature has also enacted a Manufactured Building Code which, except for a provi-

---

[1]Section 145.06, Stats., provides in part:

(1)(a)  No person may engage in or work at plumbing in the state unless licensed to do so by the department. A master plumber may work as a journeyman. No person may act as a plumbing apprentice or pipe layer unless registered with the department.

. . .

(2)  *No person shall install plumbing unless at all times a licensed master plumber is in charge, who shall be responsible for proper installation.* Licenses shall be issued only to individuals and no license shall be issued to or in the name of any firm or corpora-tion. No such license shall be transferable. It is unlawful for any licensed master plumber to allow the use of his license, directly or indirectly, for the purpose of obtaining local permits for others or to allow the use of his license by others to install plumbing work. [Emphasis added.]

sion which recognizes the continued validity of ch. 145, Stats., does not mention this requirement. *See* secs. 101.70 to 101.77, Stats. Although the majority examines voluminous task force and advisory commission reports, it finds nothing specifically indicating that master plumbers are not required to supervise in-plant manufactured housing projects.

Given a specific statutory requirement, and other legislation which addresses a different subject, a court would usually conclude that the legislature, aware of the master plumber requirement of sec. 145.06(2), Stats., chose not to exempt manufactured housing from that requirement. *See Maxey v. Redevelopment Auth. of Racine,* 120 Wis. 2d 13, 24, 353 N.W.2d 812, 818 (Ct. App. 1984) (when legislature enacts a statute, it does so with full knowledge of existing statutes). It is the duty of the courts to construe two statutes so that both will be operative. Repeal of a statute by implication is disfavored. *Id.*

Rather than focus on whether sec. 145.06, Stats. is ambiguous and, if not, whether there is any reason to ignore its plain meaning, the majority instead subdivides the issues as follows: (1) "whether the department has correctly construed its administrative rules," and (2) "whether the Manufactured Building Code authorized the department to adopt its administrative rules which it has interpreted as permitting it to approve, for sale and installation in the state, manufactured housing in which the plumbing has been installed without complying with sec. 145.06(1)(a) and (2), Stats." Majority op. at 976.

The subject of this lawsuit is the interpretation of sec. 145.06, Stats. I fail to see the relevancy of whether the department has correctly interpreted its *own* administrative regulations. *Pfeiffer v. Board of Regents,* 110 Wis. 2d 146, 328 N.W.2d 279 (1983), holds that we

should give controlling weight to "the interpretation by an administrative agency of its own regulation." *Id.* at 154, 328 N.W.2d at 283 (citation omitted). However, as a footnote to *Pfeiffer* emphasizes, this standard applies "[w]hen the construction of an administrative regulation *rather than a statute is in issue." Id.* at 155 n.12, 328 N.W.2d at 283 n.12 (emphasis added) (quoting *Udall v. Tallman,* 380 U.S. 1, 16 (1965)).[2] The controversy in this case involves whether the department has erroneously interpreted sec. 145.06, Stats., not whether this interpretation complies with the numerous administrative code provisions cited by the majority. The latter inquiry is irrelevant.

The department's interpretation of sec. 145.06, Stats., the majority urges, is entitled to the "highest level of deference courts give to agency interpretations of statutes." Majority op. at 986 (citation omitted). This is because this case presents "the unique circumstance that the department's expertise and experience contributed to the formulation of the legislation [the Manufactured Building Code] which it subsequently was required to interpret." Majority op. at 984.

The majority cites no Wisconsin cases for the proposition that an agency's construction of a statute warrants nearly conclusive deference where the agency participates in the drafting of a statute. The department's involvement in pending legislation affecting the department is not unique. Most agencies do the same thing.

---

[2]The *Pfeiffer* court continues:

> An administrative agency knows the specific purposes of the regulations it has promulgated. Moreover, an agency has a certain expertise in the area it is called upon to regulate. Thus we believe that an agency is in the best position to interpret its own regulations in accordance with their underlying purposes.

*Id.* at 155, 328 N.W.2d at 283.

Agency participation means only that the agency considered the matters contained in the legislation. The agency may or may not have considered collateral matters. Inferences drawn in those situations are guesswork. Regardless, the statute involved in this case is not the Manufactured Building Code (secs. 101.70 to 101.77, Stats.), but sec. 145.06, Stats. Indeed, the parties' original briefs in this case did not mention the Manufactured Building Code. Only when this court ordered briefing on the Code did the parties address it. The fact that the department was extensively involved in the formulation of the Manufactured Building Code and the administrative rules implementing the Code confers upon it no special expertise to construe a statute that has nothing to do with the Manufactured Building Code.

The majority also ignores a part of the Manufactured Building Code which indicates that the legislature was aware of chapter 145's existence, and required the department to enact rules which assured compliance with chapter 145. Section 101.73, Stats., provides in pertinent part:

> The department shall:
>
> . . ..
> (2) Adopt rules for the examination of plans and specifications and for periodic in-plant and on-site inspections of manufacturing facilities, processes, fabrication, assembly and installation of manufactured buildings to ensure that examinations and inspections are made in compliance with the rules . . . for indoor plumbing adopted by the department *under ch. 145.* [Emphasis added.]

One of the rules for indoor plumbing adopted by the department under chapter 145 is Wis. Adm. Code sec. ILHR 82.40(9):

998

PIPING BY PLUMBER. In accordance with ch. 145, Stats., piping which conveys water for human use or consumption, or to plumbing fixtures and plumbing appliances of every description, shall be installed by persons licensed by the department.

Had the legislature intended that the Manufactured Building Code's insignia plan supplant sec. 145.06(2), Stats., it would not have required the department to adopt rules that mandate the use of master plumbers to install water pipes. And certainly, the legislature would not have included this requirement in the Manufactured Building Code.

The effect of the majority's decision is to substitute the department's "compliance assurance program" in place of licensed plumber supervision, and to substitute its view of the need for licensed plumbers for a contrary legislative determination. The "compliance assurance program," however, is concerned with design, not fabrication integrity. The best plans, specifications and calculations can be rendered unsafe by an untrained assembly line worker. A "compliance assurance program" is merely a model document to evaluate, approve and inspect a manufactured building. *See* Wisconsin Adm. Code sec. ILHR 20.24(3).

Were I writing for the majority, I would conclude that the legislature's plainly demonstrated intent was that plumbing, in all dwellings, be installed under the supervision of Wisconsin licensed master plumbers.