In re the Marriage of: Marcus P. Paulhe,
Petitioner-Respondent,

v.

Monica M. Riley, p/k/a Monica M. Paulhe,
Respondent-Appellant.†

Court of Appeals

*No. 2005AP2487. Submitted on briefs June 8, 2006.
—Decided July 5, 2006.*

2006 WI App 171

(Also reported in 722 N.W.2d 155.)

† Petition to review denied 10/10/06.

On behalf of the respondent-appellant, the cause was submitted on the brief of *William W. Moir III* of *Hopp, Neumann, Humke, LLP*, of Sheboygan.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *William H. Holbrook* of *Holbrook, Wurtz, Roth, Basler & Brock, LLP*, of Sheboygan.

An amicus curiae brief was submitted by *American Academy of Matrimonial Lawyers-Wisconsin Chapter, Margaret W. Hickey, President,* and by *Marygold S. Melli,* and *Carlton D. Stansbury.*

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J.   The Social Security Administration determined that Marcus P. Paulhe was disabled and therefore paid social security disability benefits to Marcus' former wife, Monica M. Riley, on behalf of the parties' minor child, Abbe. Based on these disability payments, Marcus sought credit against child support payments he had previously made. The family court granted Marcus' request and entered a postjudgment order directing Monica to reimburse Marcus for a portion of the child support payments. Monica appeals.

¶ 2.   Monica contends that the order constitutes a retroactive revision of support contrary to WIS. STAT. § 767.32(1m) (2003–04).[1] Monica further contends that the exception set out in § 767.32(1r)(d), which permits retroactive revision of child support based on social security disability benefits in instances of unpaid support, does not apply since Marcus had made all of his support payments in a timely fashion. Monica argues that the statute represents the only instance in which credit is allowed.

¶ 3.   On a threshold basis, the family court ruled that the order granting Marcus credit did not constitute a revision of the child support order under WIS. STAT. § 767.32(1m). In addition, the court agreed with Monica that § 767.32(1r)(d) was limited to instances of "unpaid support." However, the court noted the illogic and unfairness produced by allowing a credit under § 767.32(1r)(d) to a payor who had failed to make child support payments, but denying such relief to a payor like Marcus who had made all required child support payments. Thus, the court granted Marcus credit

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

against his previously paid support payments for the period of time covered by the social security disability benefits paid to Monica on Abbe's behalf.

¶ 4. We agree that the family court's grant of credit to Marcus did not constitute a revision of the child support order. We also hold, on grounds of both public policy and fairness, that WIS. STAT. § 767.32(1r)(d) should not be construed to bar credit in a situation where a child support payor has made all requisite support payments. Our holding avoids an interpretation of § 767.32(1r)(d) which likely would create an equal protection violation. As the result of our decision, Wisconsin joins the majority of other jurisdictions that have addressed the issue before us.

### Amicus Curiae Brief of the American Academy of Matrimonial Lawyers—Wisconsin Chapter

¶ 5. At the outset, we express our appreciation to the Wisconsin chapter of the American Academy of Matrimonial Lawyers for its participation in this appeal as amicus curiae.[2] In particular, we thank Attorneys Margaret W. Hickey, Marygold S. Melli and Carlton D. Stansbury, members of the Academy and coauthors of the amicus brief, who have provided us with a cogent analysis of the appellate issue. We borrow liberally from the amicus brief in this opinion.

### Facts

¶ 6. The facts of this case are straightforward and undisputed. Monica and Marcus were divorced in September 1989. Monica was awarded custody of the par-

---

[2] The Academy joined in this appeal as amicus curiae at our invitation.

ties' then three minor children, and Marcus was ordered to pay support. Over time, the two eldest children attained majority, resulting in an October 2004 stipulated child support order directing Marcus to pay $513.45 per month as child support for Abbe, the remaining minor child.

¶ 7.   In February 2005, Marcus filed a motion to revise support based on the fact that he had become totally disabled as of November 2003 and, as a result, Monica had received social security disability benefits on Abbe's behalf. Although Marcus' motion was to "revise" the child support, his actual request was that the family court "credit" the social security disability payments received by Monica against the child support Marcus had previously paid, measured from the date of his disability.[3]

¶ 8.   The evidence at the hearing on the motion established that Marcus, although not employed because of his disability, had income from two sources:   (1) his own social security disability benefits in the amount of $1569 per month; and (2) supplemental benefits from a separate disability insurance policy in the amount of $1502.50 per month. In addition, Marcus had received lump-sum social security disability payments in the amount of $13,683 for past-due disability benefits. Similarly, Monica had received a past-due disability lump-sum payment on behalf of Abbe in the amount of $7642 based on Marcus' disability. In addition, Monica was receiving monthly social security

---

[3] Marcus also asked that a portion of the social security disability payments be credited against his outstanding obligation to Monica for certain prior medical expenses Monica had incurred on Abbe's behalf. The family court authorized Monica to deduct these expenses from the credit due Marcus. This provision of the order is not before us.

disability benefits on behalf of Abbe in the amount of $784. The evidence also established that Marcus had remained current in all of his support payments despite being unemployed.

¶ 9. At the close of the evidence, Monica agreed that Marcus' current support obligation could have been suspended effective February 2005 because the current level of social security disability payments in the amount of $784 per month exceeded Marcus' monthly support obligation. Thus, the issue narrowed to whether Marcus was entitled to credit against his previously paid child support based on the social security disability payments received by Monica on Abbe's behalf for the period from November 2003 to January 2005.

¶ 10. In opposing Marcus' motion, Monica argued that WIS. STAT. § 767.32(1m) bars retroactive revision of a child support order prior to the date that notice of the application is given. However, this rule is subject to the exception set out in § 767.32(1r)(d), which permits retroactive revision of a child support order based on social security disability payments in instances of "unpaid support." Since Marcus had always been current in his child support payments, Monica argued that this exception did not apply.

¶ 11. The family court first ruled that the order granting Marcus' request for credit against his previous support payments did not constitute a revision of the judgment. In addition, the court agreed with Monica that this was not a case of "unpaid support" under WIS. STAT. § 767.32(1r)(d). Nonetheless, the court granted Marcus' request for credit against his previously paid child support on grounds of fairness. As explanation, the court noted the incongruity of Monica's argument, which would allow a credit to a child support payor who

had failed to make support payments but deny a credit to a payor who had made support payments despite the disability. Monica appeals.

## Discussion

¶ 12. We begin with two very important observations that we will restate a number of times during our discussion. First, social security disability payments are not gratuitous benefits conferred by a benevolent governmental policy. *In re Marriage of Henry*, 622 N.E.2d 803, 808 (Ill. 1993); *see also Potts v. Potts*, 240 N.W.2d 680, 681 (Iowa 1976). To the contrary, such payments are more properly characterized as a substitute for the disabled parent's earnings, funded by the parent's payment of social security taxes. *Henry*, 622 N.E.2d at 808–09; *see also Williams v. Williams*, 727 N.E.2d 895, 897 (Ohio 2000); *Potts*, 240 N.W.2d at 681. Second, Marcus was current in all of his child support obligations. With these concepts prominently in mind, we turn to the analysis of the issue.

¶ 13. We first state our agreement with the family court's ruling that the order granting credit to Marcus did not constitute a revision of the standing child support order. Although Marcus titled his motion as one to "revise" support, his actual claim for relief was for "credit" against the support he had already paid. In granting that relief, the court did not disturb the standing order for child support. Instead, the court merely recognized that the child support for the period in question had been "double paid"—once via Marcus' direct payments and again via the social security disability benefits paid to Monica on Abbe's behalf based

on social security payments Marcus previously had made though his earnings. Going into the hearing, Marcus' child support obligation stood at $513.45 per month; coming out of the hearing, the obligation, although suspended, remained the same.

¶ 14. Next, we address Monica's argument that the grant of credit is barred by WIS. STAT. § 767.32(1r)(d). As noted, this statute permits social security disability payments paid on behalf of a child to be credited against a payor's child support obligation in instances of "unpaid support." Monica argues that this statute represents the sole instance in which credit is permitted and, since Marcus was current in his child support payments and therefore there was no "unpaid support," Marcus was not entitled to any credit.

¶ 15. Monica relies on *Burger v. Burger*, 144 Wis. 2d 514, 424 N.W.2d 691 (1988), where the supreme court held that a payor was entitled to credit for a lump-sum payment on arrears accumulated during a period of disability. *Id.* at 527. Monica reasons that had the court intended to also allow credit in a situation where, as here, the payor was not in arrears, it would have said so. Monica makes the same argument regarding the legislature's later enactment of WIS. STAT. 767.32(1r)(d), which codified the *Burger* holding.[4]

¶ 16. We disagree that *Burger*, or its codification in WIS. STAT. § 767.32(1r)(d), applies in the situation before us. In *Burger*, the supreme court addressed only whether a payor who was in arrearsnot one who was currentwas entitled to a credit. Moreover, we see noth-

---

[4] *Burger v. Burger*, 144 Wis. 2d 514, 424 N.W.2d 691 (1988), predated the enactment of both WIS. STAT. §§ 767.32(1m) and 767.43(1r)(d). *See* Lucy Cooper and Carlton D. Stansbury, *The Pendulum Swings Again: Credit for Child Support Arrears Now Allowed in Limited Scenarios*, 19 WIS. J. OF FAM. L. 40 (1999).

ing in the language or reasoning of *Burger* that speaks to, or bears on, the different situation presented in this case. Unless an appellate decision says otherwise, we abide by the ancient principle that the decision is controlled and limited by the facts of the particular case. *Murphy v. Chicago & Nw. Ry. Co.*, 45 Wis. 222, 226, 30 Am. Rep. 721 (1878). And since Wis. Stat. § 767.32(1r)(d) codifies *Burger* by speaking only to instances of "unpaid support," we construe the statute in the same limited fashion.

¶ 17.   We find support for our holding in certain basic precepts of social security disability law. Every dependent child of an individual who is entitled to social security disability benefits is entitled to the child's insurance benefits conferred by the act. 42 U.S.C. § 402(d)(1) (2004). The benefit amount is based upon the disabled worker's earnings record and the number of other dependents receiving benefits on the worker's earnings record. Carlton D. Stansbury, The Family Law Practitioner's Guide to Social Security 40 (American Bar Association 1995, 2nd printing). The benefits are not paid directly to the child, but rather to the child's representative payee, here Monica. *See* 20 C.F.R. § 404.2035 (2006). The benefits are to be applied to the child's current support and reasonably foreseeable needs. *See id.* at 404.2040 (2006).

¶ 18.   The process of applying for and obtaining social security disability benefits can be long and complex. *See, e.g., Pacana v. State*, 941 P.2d 1263, 1267 (Alaska 1997). If the process is drawn out and the application is ultimately approved, the delayed benefits are paid on a retroactive basis. *Id.* at 1265–67. That is what occurred in this case. Monica received a lump-sum benefit on Abbe's behalf retroactive to the November

550

2003 effective date of Marcus' disability. Thereafter, the monthly disability benefits continued.

¶ 19.   The overwhelming majority of jurisdictions that have addressed the credit question before us hold that a child support payor is entitled to credit against a child support obligation for the amount of social security disability benefits the child receives based upon the payor's earnings record and disability.[5] The core rationale of these cases is well stated in *Henry*:

> [T]he right to social security benefits is earned . . . . Thus, social security dependent disability benefits are not gratuitous, but are generated by the noncustodial parent through his [or her] labor and earnings.
>
> The sole and express purpose of social security dependent benefits is to support dependent children . . . . Social security dependent disability benefits replace support the child loses upon the disability of the wage earner responsible for the child's support, and such benefits substitute for a parent's loss of earning power and obligation to support his [or her] dependents. Thus, the source and the purpose of social security dependent benefits are identical to the source and purpose of child support—both come from a noncustodial parent's wages or assets and both provide for the needs of the dependent child, and, for our purposes,

---

[5] *See, e.g., Children and Youth Servs. of Allegheny County v. Chorgo*, 491 A.2d 1374 (Pa. 1985); *Williams v. Williams*, 727 N.E.2d 895 (Ohio 2000); *Pontbriand v. Pontbriand*, 622 A.2d 482 (R.I. 1993); *Harbison v. Harbison*, 688 So. 2d 876 (Ala. Ct. App. 1997); *Miller v. Miller*, 890 P.2d 574 (Alaska 1995); *Jenkins v. Jenkins*, 704 A.2d 231 (Conn. 1998); *Sealander v. Sealander*, 789 So. 2d 401 (Fla. Dist. Ct. App. 2001); *Poynter v. Poynter*, 590 N.E.2d 150 (Ind. Ct. App. 1992); *McCloud v. McCloud*, 544 So. 2d 764 (La. Ct. App. 1989); *Frens v. Frens*, 478 N.W.2d 750 (Mich. Ct. App. 1991); *Romero v. Romero*, 682 P.2d 201 (N.M. Ct. App. 1984); *Farley v. Farley*, 412 S.E.2d 261 (W.Va. 1991).

551

> *"no principal distinction exists between social security benefits and child support payments."*
>
> [B]ecause social security dependent disability benefits are earned by the noncustodial parent, *made on behalf of such parent,* and, in fact, paid at least in part with contributions from the noncustodial's own earnings, payment of social security dependent disability benefits satisfies a noncustodial parent's child support obligation.

*Henry*, 622 N.E.2d at 808–09 (citations omitted; emphasis added).

¶ 20. The mechanics of the Wisconsin Child Support Percentage of Income Standard guidelines reflect this same thinking. WISCONSIN ADMIN. CODE § DWD 40.03(5) (Dec. 2003) provides that social security disability benefits paid to a child are *added* to the payor's gross income *prior* to calculating the payor's support obligation. The benefit amount is then subtracted from the payor's support obligation to determine the amount of child support for which the payor is actually responsible.[6]

¶ 21. If we were to agree with Monica that Marcus is not entitled to credit, Marcus would be paying his child support obligation twice: first, by his initial support payments paid directly to Monica, and second, by the subsequent social security disability benefits paid to Monica on Abbe's behalf, funded by Marcus' earnings when he was employed.[7]

---

[6] This thinking is also reflected by the rule that a payor is not entitled to credit for social security payments received by a child based on the earnings record of the custodial parent or other third party. *See In re Marriage of Foley*, 501 N.W.2d 497, 499 (Iowa 1993).

[7] The amicus observes that in only one limited situation is a payee not required to reimburse a payor for a portion of the

¶ 22. We also base our holding on public policy grounds. The paramount goal of child support is to promote the best interests of children and to avoid financial hardship to children of divorced parents. *Ondrasek v. Tenneson*, 158 Wis. 2d 690, 695, 462 N.W.2d 915 (Ct. App. 1990). If we were to limit a payor's credit entitlement to only situations of "unpaid support," we would encourage disabled payors who nonetheless have the ability to pay support, to terminate child support payments in anticipation that potential future social security disability payments will eventually make up the shortfall. That would leave the child without child support during this interim, a result clearly contrary to the public policy underpinning child support. To his credit, Marcus did not take this route. Instead, he honored his child support obligations. As a result, he is now rightfully entitled to credit against those payments based on the social security disability payments that he funded by his earnings while working.

¶ 23. Our holding also avoids a potential constitutional equal protection violation. *See Plumbers Local No. 75 v. Coughlin*, 166 Wis. 2d 971, 994, 481 N.W.2d 297 (Ct. App. 1992) ("[W]e have a duty to construe a statute to avoid *potential* constitutional violation."). We have already noted the incongruity of Monica's argument that would grant credit to a child support payor in

child's social security disability benefits: when the social security disability benefit paid on behalf of the child exceeds the child support obligation, the amount of the excess is not subject to reimbursement. *See, e.g., Weaks v. Weaks*, 821 S.W.2d 503, 507 (Mo. 1991); *Andler v. Andler*, 538 P.2d 649, 654 (Kan. 1975); *Bowden v. Bowden*, 426 So. 2d 448 (Ala. Ct. App. 1983); *Potts v. Potts*, 240 N.W.2d at 680, 681 (Iowa 1976).

arrears, but deny it to a payor who is current. In its simplest terms, equal protection requires that those who are similarly situated must be similarly treated. *See State v. Miller*, 2004 WI App 117, ¶ 14, 274 Wis. 2d 471, 683 N.W.2d 485, *review denied*, 2004 WI 123, 275 Wis. 2d 296, 687 N.W.2d 523. When the legislation at issue does not involve a suspect classification or fundamental interest, we examine the statute to determine if it is rationally related to a legitimate governmental interest. *See Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 11, 245 Wis. 2d 86, 630 N.W.2d 141. A statute violates equal protection when the legislature has made an irrational or arbitrary classification, that is, one that has no reasonable purpose or relationship to the facts or a proper state policy. *Id.*

¶ 24. If, as Monica contends, the legislature truly intended WIS. STAT. § 767.32(1r)(d) to bar a credit to those payors who are current in their child support payments, we candidly state that we are unable to discern any rational basis to support such a distinction from those who are in arrears and are clearly entitled to the credit under the statute. Such a distinction would be patently unreasonable and arbitrary on its face and would serve no public purpose. Although the family court was not speaking in constitutional terms, it struggled with this same concern when it wondered aloud whether Monica's construction of the statute bordered on the absurd. And the court's ultimate ruling, grounded in notions of fairness, avoided such a result. Moreover, the court's reasoning echoed that expressed by the majority of courts that have ruled similarly on this issue: "Under these circumstances, it is *equitable* to treat dependency benefits as a substitute for child support for the period during which such benefits are paid." *Potts*, 240 N.W.2d at 681 (emphasis added).

554

## Conclusion

¶ 25.   We hold that the family court's grant of credit to Marcus did not constitute a revision of the standing child support order under WIS. STAT. § 767.32(1m). In addition, based on public policy, constitutional, and equitable grounds, we also hold that § 767.32(1r)(d), which allows for a credit in instances of "unpaid support," does not bar credit in a case where the child support payor has made all required support payments.[8]

*By the Court.*—Order affirmed.

---

[8] We caution that the credit is limited to the extent of child support previously paid. Any excess is retained and preserved for the benefit of the child. *See, e.g., Weaks*, 821 S.W.2d at 507; *Andler*, 538 P.2d at 654.