[Cite as *Hamilton v. Reynolds*, 2013-Ohio-5660.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY


AMY M. HAMILTON,
NKA AMY BARROWS,

      PLAINTIFF-APPELLANT,               CASE NO. 5-13-11

      v.

JEFFREY G. REYNOLDS,              O P I N I O N

      DEFENDANT-APPELLEE.


Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20240150

Judgment Affirmed

Date of Decision:   December 23, 2013


APPEARANCES:

    *Garth W. Brown* for Appellant

**SHAW, J.**

{¶1} Plaintiff-appellant, Amy M. Hamilton nka Barrows ("Amy"), appeals the March 15, 2013 judgment of the Hancock County Juvenile Court granting a motion to modify child support and a motion for judgment on overpayment filed by the Hancock County Child Support Enforcement Agency ("HCCSEA"), and issuing a judgment against Amy in the amount of $18,105.52 for a child support overpayment made by defendant-appellee, Jeffrey G. Hamilton ("Jeffrey"), and ordering Amy pay the judgment in monthly installments of $500.00, plus processing fees.

{¶2} This case has a long and contentious history regarding custody of the parties' children. For economy, we will only include those facts pertinent to the child support issue raised in the assignments of error.

{¶3} In August of 2002, this case was initiated when Amy filed a complaint requesting the trial court to adopt an administrative order issued by the HCCSEA on July 23, 2002. In this order, the HCCSEA determined Jeffrey to be the legal father of Amy's three children, N.M.R. (born in October 1999), N.C.R. (born in October 1999), and A.R. (born in September 2001), and ordered Jeffrey to pay child support in the amount of $963.66 per month.

{¶4} On January 28, 2003, the trial court issued a judgment entry finding Jeffrey to be the natural father of the three children and ordering him to pay monthly child support of $963.66.

{¶5} On November 6, 2003, the HCCSEA filed a motion to modify Jeffrey's child support to increase his monthly obligation. The trial court subsequently issued an order modifying Jeffrey's child support to $1,365.00 per month.

{¶6} On August 2, 2005, the HCCSEA filed a motion to modify Jeffrey's child support to decrease his monthly obligation. On July 17, 2006, trial court issued a judgment entry modifying Jeffrey's child support to $990.14 per month.

{¶7} On August 8, 2008, the parties agreed to modify Jeffrey's monthly child support obligation to $463.87, commencing May 1, 2008, via a consent judgment entry. In this consent judgment entry, the parties acknowledged that Jeffrey had been injured in an accident and was no longer employed. The new monthly child support figure was calculated based on the long-term disability benefits Jeffrey received through a private insurance policy. The judgment entry also stated that Jeffrey had a pending claim in a civil lawsuit through which he expected to be compensated for lost wages. Accordingly, based upon the parties' agreement, the judgment entry ordered "that should [Jeffrey] recover any lost wages attributable to the year 2008, this amount shall be considered as [Jeffrey's]

income and the child support worksheet attached hereto shall be recalculated." (Doc. No. 181 at 2).

{¶8} On March 26, 2009, the HCCSEA filed a "Motion to Modify Child Support and to Give Credit for Benefits Received." In this motion, the HCCSEA stated that after the last child support modification on August 8, 2008, Jeffrey applied for and was approved to receive Social Security disability benefits in the amount of $1,603.00 per month.

{¶9} In a supporting memorandum, the HCCSEA explained that each of the three children had also received a lump sum payment of $4,663.00 (or $13,989.00 total) in derivative Social Security benefits due to Jeffrey being deemed disabled from April 2007 through October 2008. However, the HCCSEA further stated that during this time period Jeffrey had remained current in his child support obligation by making payments either directly from his disability benefits plan through his private insurance policy or from other income sources available to him. The HCCSEA argued that Jeffrey had effectively paid his child support obligation twice when Amy received the $13,989.00 in Social Security funds on the children's behalf. Accordingly, the HCCSEA requested Jeffrey's child support account be adjusted to reflect a credit of $13,989.00.

{¶10} The HCCSEA also informed the trial court that Jeffrey had since returned to work and his children were no longer receiving Social Security

dependency benefits. Therefore, the HCCSEA requested Jeffrey's child support obligation again be adjusted to reflect his current income.

**{¶11}** Shortly thereafter, pursuant to a court order, the $13,989.00 was "impounded" and the distribution of the funds was delayed until after a hearing on the matter. (Doc. No. 185).

**{¶12}** On July 17, 2009, the trial court issued a judgment entry modifying Jeffrey's child support obligation to $612.61 a month, plus processing fees, commencing November 1, 2008.

**{¶13}** On August 7, 2009, the magistrate issued a decision addressing the issue of the overpayment. In her decision, the magistrate cited *Williams v. Williams*, 88 Ohio St. 3d 441, 444, in which the Supreme Court of Ohio stated that a child support obligor "is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child." The magistrate specifically stated the following regarding the overpayment:

> **It is clear that a disabled parent is entitled to a full credit against his or her child support obligation for social security payments received by a minor child. [Amy] received derivative benefits for the three children from April 2007 to October 2008. During that time, [Jeffrey's] actual support liability, not including processing fees, was $15,655.04. [Amy] received $13,989.00 in Social Security payments and $16,008.03, not including processing fees, in direct payments by [Jeffrey] or his disability insurance. Since [Jeffrey's] payments exceeded the amount due for the period from April 2007 through October 2008, he should receive a credit of $13,989.00 against future child support due.**

> **As of the end of June 2009, [Jeffrey] had a credit of approximately $1,961.50, which represents his credit as of the end of 2008, and no payments were charged in the months of February through June 2009, by [the HCCSEA]. The amount due for those five months is approximately $2,319.40, which monies were impounded by [the HCCSEA]. The [HCCSEA] should be ordered to release the impounded funds to [Jeffrey].**
>
> **It is clear that [Jeffrey] will have a large futures amount, and the issue is how he is to recoup that amount from [Amy]. The Court must consider the best interest of the children, and assume that Obligee needs money to support the children of the parties, however, [Amy] should not receive a windfall of double payments for 18 months. The current Order provides that [Jeffrey] is to pay $612.61, per month, plus processing charge, as long as health insurance is provided * * *[.] Jeffrey should be ordered to pay the sum of $412.61 per month, plus processing charge * * *[.] This is a repayment of $200.00 per month on the Social Security benefits.**

(Doc. No. 194 at 5-6). On October 19, 2009, the trial court approved the magistrate's decision and issued a judgment entry setting forth orders in accordance with that decision.

{¶14} On May 7, 2010, Amy filed "Motion to Recalculate Child Support Based Upon Income to Defendant in the Year 2008 Pursuant to this Court's Judgment Entry of August 8, 2008." In a subsequent hearing addressing the motion, it was revealed that Jeffrey had settled his civil lawsuit and received compensation for lost wages in 2008. In a judgment entry dated March 21, 2011, Jeffrey's child support obligation for the year of 2008 was increased by $928.44 and the trial court ordered the "futures" account to be deducted by that amount.

{¶15} On January 18, 2012, the HCCSEA filed a motion to modify child support due to Jeffrey's approval for Social Security disability benefits as of December 2009. On the same day, the HCCSEA also filed a "Motion For Judgment on Overpayment," informing the trial court that Amy had again received a lump sum payment of derivative Social Security benefits on behalf of the parties' children due to Jeffrey's recent approval for disability benefits. The HCCSEA requested the trial court to determine if Jeffrey had overpaid his child support for the most recent time period he was entitled to receive Social Security disability benefits. The HCCSEA also requested the trial court to reduce any amount of overpayment to a judgment in favor of Jeffrey and order Amy to make reasonable payments to satisfy the judgment.

{¶16} On July 31, 2012, Amy and Jeffrey appeared *pro se* before the magistrate on the issue of the overpayment and reimbursement. Legal counsel for the HCCSEA was also present at this hearing and admitted into evidence several administrative records regarding Jeffrey's child support account.

{¶17} In a subsequent decision, the magistrate made the following findings of fact based upon the evidence presented at the hearing: (1) Amy received a lump sum payment of $5,684.00 for each of the three children (or $17,052.00) based upon Jeffrey's qualification for Social Security disability benefits for the time period of December 2009 through January 2012; (2) Jeffrey's child support

obligation during this time period was $15,927.86; (3) As of December 2009, the "futures" account which was funded by the child support overpayment Amy received in 2007 and 2008 contained $11,468.95; (4) During the time period between December 1, 2009 through the end of January, the "futures" account was reduced in monthly increments to satisfy a portion of Jeffrey's child support obligation; (5) During March of 2011, the parties litigated a dispute regarding lost wage compensation awarded to Jeffrey in a civil lawsuit which resulted in a judgment reducing the "futures" account by $928.44; (6) At the end of January 2012, the "futures" account contained $2,177.66;[1] (7) In addition to the child support payments made from the "futures" account, Jeffrey also paid $7,565.01 in child support from other income sources for the period of December 2009 through January 2012; (8) Amy disputed that she received any overpayment in child support for the relative time period; (9) Amy also informed the court she spent the entire amount she received from Social Security on the children's behalf and generally alluded to some significant medical issues experienced by one of the children but provided no specific evidence regarding the medical issue at the motion hearing. (Doc. No. 233 at 6-7).

---

[1] The record reflects that the "futures" account had a zero balance as of May 2012 and that the funds remaining at the end of January 2012 were used to pay Jeffrey's child support obligation from February 2012 until the "futures" account was depleted. It should be noted that Amy was also receiving Social Security benefits on behalf of the children during this time.

{¶18} Based on the evidence at the hearing, the magistrate concluded that Jeffrey had once again overpaid his child support when Amy received the lump sum payment of Social Security benefits on behalf of the children as a result of Jeffrey being deemed disabled for the period of December 2009 through January 2012 and when Amy also received monthly child support payments from Jeffrey during this timeframe. Specifically, the magistrate found that this time Jeffrey was entitled to a reimbursement of $18,105.52. This number consisted of the balance of the "futures" account as of December 2009 ($11,468.95), minus the judgment for Jeffrey's lost wages relating back to 2008 ($928.44), plus the amount Jeffrey paid in monthly child support payments from other income sources during the time period of December 2009 through January 2012 ($7,565.01).

{¶19} The magistrate then made the following recommendations based on the evidence presented at the motion hearing:

**1. The Court should find that current child support should be adjusted to $0.00 effective February 1, 2012 based upon the derivative benefits received by [Amy] on behalf of the child[ren] exceeding the child support amount owed. [Amy] is providing health insurance for the children and the amount paid is provided for in the calculation. Accordingly, no cash medical support is owed.**

**2. The Court should find that [Jeffrey] has overpaid support to [Amy] in the amount of $18,105.52. The Court should order that the HCCSEA establish a separate SETS account for this overpayment, should grant judgment on the overpayment, and should order that [Amy] pay this amount to [Jeffrey] in installments of $500.00 per month plus processing fees.**

**3.    The Court should order that the parties split the costs of these proceedings equally.**

(Doc. No. 233 at 9).

{¶20} In making these recommendations, the magistrate specifically noted that "[Amy] has been through this before and it is unconscionable that she would simply cash the [Social Security] check and spend the money knowing of [sic] the amount of futures owed and the fact that [Jeffrey] also paid support during this time.  Furthermore, the $500.00 is reasonable in light of amount of the debt and taking into account the financial situation of the parties."  (Doc. No. 233 at 8-9).

{¶21} Amy subsequently filed objections to the magistrate's decision which were overruled by the trial court.  On March 15, 2013, the trial court approved the magistrate's decision and issued orders in accordance with the magistrate's recommendations.

{¶22} Amy now appeals asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN *WILLIAMS V. WILLIAMS* WAS USED AS THE JUSTIFICATION FOR THE RETROACTIVE MODIFICATION OF THE CHILD SUPPORT PAYMENTS FOLLOWING THE RECEIPT OF SOCIAL SECURITY BENEFITS BY THE FATHER.**

### ASSIGNMENT OF ERROR NO. II

**EVEN IF IT IS FOUND THAT THE APPLICATION OF *WILLIAMS* WAS NOT IN ERROR, IT WOULD BE**

**INEQUITABLE TO REQUIRE APPELLANT TO MAKE MONTHLY PAYMENTS TO APPELLEE GIVEN HER CURRENT FINANCIAL SITUATION.**

*First Assignment of Error*

{¶23} In her first assignment of error, Amy argues that the trial court misapplied the ruling of the Supreme Court of Ohio in *Williams v. Williams*, 88 Ohio St.3d 441 (2000), when it concluded that Jeffrey had overpaid his child support for the period of December 2009 through January 2012 and was entitled to reimbursement from Amy.

{¶24} In *Williams*, the Supreme Court was asked to resolve a conflict between the appellate districts and answer the following question: "Should a disabled parent's child support obligation be directly set off by Social Security payments received on behalf of a minor child, or should the joint child support obligation of both parties be reduced by the amount of the Social Security payments?" *Id.* at 442. The Supreme Court answered the question raised by joining " 'an overwhelming majority'" of "jurisdictions" that permit a disabled parent's child support obligation to be directly set off by Social Security payments received on behalf of the minor child." *Id.* at 444.

{¶25} Central to the Supreme Court's rationale in *Williams* is the principle that "Social Security benefits are characterized as a substitute for the disabled

parent's earnings rather than gratuities from the federal government."[2] *Williams* at 443. The reasoning for this is twofold: (1) the underlying intent behind Social Security disability payments to a child is to provide support that the disabled parent is unable to provide; and (2) Social Security disability benefits represent contributions that a worker has made throughout the course of employment and the worker has a vested right in the payments. Thus, in this sense, the benefits represent earnings in much the same way as do benefits paid by an insurance company. *Id.* at 443-44.

{¶26} The Supreme Court further addressed concerns about whether its decision retroactively modifies an obligor's child support obligation and stated, "it is illogical to suggest that the granting of a credit will result in a windfall to the obligor and will penalize the child by providing that child with less money for his or her support. In essence, 'a credit for * * * Social Security benefits does not retroactively modify the disabled parent's monthly child support obligation; *it merely changes the source of the payments*.' " *Id.* at 444, citing *In re Marriage of Cowan,* 279 Mont. 491, 500, 928 P.2d 214, 220 (1996) (emphasis added).[3]

---

[2] Notably, courts in other jurisdictions which have denied credit to a child support obligor have either characterized Social Security disability payments made on the child's behalf as mere gratuities from the federal government or as funds belonging to the child. *See Davis v. Davis*, 780 N.W.2d 707 (N.D. 2010) (discussing the different approaches taken by courts in various jurisdictions).

[3] The Supreme Court in *Williams* also clarified that if the Social Security payments received on the child's behalf exceed the obligor's support obligation, then "the trial court shall enter judgment reflecting that no child support is owed from the first time [the child] received the Social Security benefits." *Williams* at 445.

{¶27} While the Supreme Court in *Williams* resolved the issue of how to apply Social Security disability payments received on the child's behalf to the obligor's current child support obligation, it did not specifically address the additional question raised on appeal in this case—specifically, whether a child support obligor who has remained current in his or her child support obligation is entitled to a reimbursement when the obligee receives a lump sum Social Security payment on the child's behalf representing the same months that the obligor paid his or her support obligation. Nevertheless, we find the *Williams* case to be instructive in determining this issue because *Williams* has incorporated into Ohio jurisprudence the legal proposition that a child support obligor is entitled to a credit in his or her child support obligation when the child receives Social Security dependency benefits as a consequence of the obligor being deemed disabled.

{¶28} As mentioned in *Williams*, a majority of other jurisdictions have also adopted the premise that Social Security payments paid on the child's behalf as a result of the obligor's disability are considered earnings that directly off-set the obligor's child support obligation. Many of these jurisdictions, including some other Ohio appellate districts, have also permitted the obligor to credit portions of a lump sum payment of Social Security dependency benefits to child support arrearages accrued during the months represented by the lump sum payment. *See e.g., Tibor v. Bendrick*, 593 N.W.2d 395, ¶¶ 7-8 (N.D. 1999); *Anderson v.*

*Anderson*, 955 N.E.2d 236 (Ind. 2011); *see, also*, *Marder v. Marder*, 12th Dist. Clermont No. CA2007-06-069, 2008-Ohio-2500, ¶ 22; *Breen v. Kraus*, 12th Dist. Butler No. CA2002-06-143, 2003-Ohio-505; *Terrell v. Terrell*, 9th Dist. Summit No. 15363 (June 24, 1992); *Pride v. Nolan*, 31 Ohio App. 3d 261, 263 (1st Dist. 1987).

{¶29} Moreover, at least two courts in other jurisdictions have addressed *the precise issue raised in this appeal* and have found that under these circumstances the obligor is entitled to reimbursement from the obligee for the child support previously paid. *See Davis v. Davis*, 780 N.W.2d 707 (N.D. 2010); *see*, *also*, *Paulhe v. Riley*, 295 Wis.2d 541 (2006). Both of these courts determined that if, under applicable state law, the obligor is entitled to a dollar for dollar credit in his or her child support obligation when the child receives Social Security dependency benefits, then the obligor is also entitled to reimbursement for child support paid to the obligee when the obligee subsequently receives a lump sum of Social Security dependency benefits representing the same months that the obligor paid child support. *Davis* at ¶ 15; *Paulhe* at ¶ 25. The Court in *Paulhe* aptly noted an important public policy ground supporting this result.

> **The paramount goal of child support is to promote the best interests of children and to avoid financial hardship to children of divorced parents. If we were to limit a payor's credit entitlement to only situations of "unpaid support," we would encourage disabled payors who nonetheless have the ability to pay support, to terminate child support payments in anticipation**

> **that potential future social security disability payments will eventually make up the shortfall. That would leave the child without child support during this interim, a result clearly contrary to the public policy underpinning child support. To his credit, [the obligor] did not take this route. Instead, he honored his child support obligations. As a result, he is now rightfully entitled to credit against those payments based on the social security disability payments that he funded by his earnings while working.**

*Paulhe* at ¶ 22 (internal citations omitted). We agree with this reasoning and therefore conclude that permitting Jeffrey to be entitled to reimbursement from Amy for the child support he paid during the period of December 2009 through January 2012 is consistent with the rule announced by the Supreme Court of Ohio in *Williams.*

{¶30} We note that on appeal Amy heavily relies upon *Filon v. Green*, 9th Dist. Summit No. 23087, 2006-Ohio-4868, to contend that Jeffrey is not entitled to reimbursement. The court in *Filon* addressed the same issue as the one raised by Amy in this appeal and found that the trial court did not abuse its discretion in denying reimbursement to the obligor based on the particular facts in that case. *Id*. at ¶ 15.

{¶31} Initially, we note that in reaching its decision, the court in *Filon* relied upon jurisprudence from other jurisdictions that either, 1) does not recognize the earnings nature of Social Security disability payments as the Supreme Court of Ohio did in *Williams* or, 2) has since been abrogated to permit

the obligor to receive a credit in his or her child support. *See e.g.*, *Anderson v. Anderson*, 955 N.E.2d 236 (Ind. 2011) (noting that *Brown v. Brown*, 849 N.E. 2d 610 (Ind. 2006), which the court in *Filon* heavily relied upon, has since been superseded by statute).

{¶32} Second, and perhaps more persuasive to the court in *Filon,* were the specific circumstances surrounding the obligor in that case which led the court to conclude that equity did not favor a return of the obligor's child support overpayment. *Id*. at ¶12. There, the court found that the obligor's actions of refusing to inform the obligee of the status of his pending application for Social Security disability benefits and telling the obligee that "it was none of her concern and that she 'was not getting any more money' " impaired the obligee's ability "to properly allocate resources to prepare to repay [the obligor] his overpaid support." *Id*. at ¶ 13. The court in *Filon* further determined that the obligor's actions demonstrated a complete disregard for the financial situation of the parties' child and noted that the obligee had used the lump-sum payment to invest in a college fund for the child. *Id*. The court concluded its opinion by stating:

> **[O]ur ruling serves the important public policy of encouraging parties who have children together to openly communicate about matters which directly affect the children's well-being. While the issue is not presently before this Court, an obligor who timely communicates the status of his pending application for benefits undoubtedly places himself in a much stronger position to urge that reimbursement is equitable. Appellant chose not to cooperate with Appellee, despite the important ramifications of**

**his actions on his own child. Accordingly, we cannot say that the trial court abused its discretion in finding that it was inequitable for Appellee to repay Appellant.**

*Id*. at ¶ 15.

{¶33} Unlike the obligor in *Filon*, the facts in the instant case demonstrate that Jeffrey had placed himself in the "stronger position to urge that reimbursement is equitable." *Filon* at ¶ 15. Specifically, the record reflects that Jeffrey was always forthcoming about the pending status of his Social Security disability applications with both Amy and the HCCSEA. Moreover, as noted in the findings of both magistrate and the trial court, the parties had previously dealt with this same overpayment issue in 2009. The trial court at that time determined that Jeffrey had overpaid his child support and was entitled to reimbursement from Amy which resulted in the "impounding" of $13,989.00 into the "futures" account. Thus, having been through this scenario once before, Amy was on notice that she likely would not be entitled to keep both the lump sum Social Security dependency payment *and* Jeffrey's child support payments for the time period of December 2009 through January 2012. Therefore, unlike the obligee in *Filon*, Amy was clearly on notice that she may have to allocate resources to prepare to repay Jeffrey for his overpayment of child support.[4]

---

[4] According to the record, Amy received the check from the Social Security Administration for the lump sum payment on February 9, 2012, nearly a month after the HCCSEA filed a motion requesting the court to address any potential overpayment and reimbursement issues. (Doc. No. 241 at 7). Thus, not only was Amy on notice of the overpayment issue by the resolution of parties' prior court proceeding, but she was

**{¶34}** Despite all of this, Amy made the decision to spend the *entire* lump sum payment (of $17,052.00) in the few months that elapsed between receiving the check and the trial court's determination of the overpayment and reimbursement issue. Notably, also unlike like the obligee in *Filon*, Amy failed to provide any specific details to the court explaining how she spent the lump sum payment and therefore the court was unable to determine that any of these funds were in fact spent for the benefit of the children. Thus, even applying the rationale of the court in *Filon*, all of these factors weigh in favor of the trial court's decision to order Amy to reimburse Jeffrey for his child support overpayment.

**{¶35}** Finally, we note Amy argues that even if Jeffrey is entitled to credit in his child support obligation, the trial court erred in determining that the credit should commence at the time Jeffrey was deemed disabled by the Social Security Administration—i.e., December 2009. Instead, Amy argues that the credit should not be applied until the children first *received* Social Security dependency benefits—i.e., when Amy received the check for the lump sum payment in February 2012. Again, Amy relies on *Filon* in support of her argument. We acknowledge that the court in *Filon* does appear to endorse the application of the credit as Amy contends. However, we do not find *Filon* to be persuasive on this point. Rather, we find the application of the credit used by the Fifth Appellate

also served with legal notice that the same overpayment issue would be litigated with respect to this second lump sum payment.

District in *Rice v. Rice*, 177 Ohio App 3d. 476, 2008-Ohio-3518, ¶ 14, in which the court determined that the obligor is entitled to credit "for *each month he was disabled*, up until the full amount of this child-support obligation" to be more consistent with the legal principle established by the Supreme Court in *Williams*.

{¶36} For all the reasons stated above, we conclude that the trial court did not err when it determined that Jeffrey overpaid his child support for the time period of December 2009 through January 2012 and therefore was entitled to reimbursement from Amy for the overpayment. Amy's first assignment of error is overruled.

### *Second Assignment of Error*

{¶37} In her second assignment of error, Amy argues that the trial court's order requiring her to reimburse Jeffrey for his child support overpayment in monthly installments of $500.00 is unduly burdensome given her current financial situation.

{¶38} An appellate court reviews child support issues under an abuse of discretion standard. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶39} At the July 31, 2012 hearing conducted by the magistrate on the issue of the child support overpayment and reimbursement, counsel for the HCCSEA questioned Amy under oath about the accuracy of the income numbers used to compute the parties' current child support worksheet. The child support worksheet, which was admitted as an exhibit without objection and not disputed by the parties on the record, reflected that Amy received a total annual income of $26,156.00 in unemployment benefits and that Jeffrey received a total annual income of $20,556.00 in Social Security disability benefits. The child support worksheet also reflected that Amy continued to receive Social Security dependency benefits for the children resulting in an annual payment of $8,136.00.

{¶40} The magistrate specifically stated that she considered the amount of Jeffrey's overpayment, $18,105.52, and the parties' financial conditions in determining that monthly installments of $500.00 was a reasonable repayment. Furthermore, in constructing a repayment plan, the magistrate also permitted Amy to repay Jeffrey over a period of roughly three years rather than requiring her to repay him the entire sum all at once.

{¶41} On appeal, Amy claims the $500.00 monthly installments are "entirely unreasonable considering her dire financial situation." (Appellant's Brief at 13). However, other than generally alluding to some medical expenses for the children, Amy presented no evidence of her "dire financial situation" either to the

magistrate or on appeal. Moreover, Amy has cited no relevant authority supporting her contention that the $500.00 monthly installments are unreasonable under the circumstances and further offers no "reasonable" number in the alternative.

{¶42} Rather, Amy implores us to find that the trial court abused its discretion in adopting the magistrate's decision solely on the basis of equity. In doing so, Amy overlooks the fact that her own conduct throughout the court proceedings and in particular her unaccounted for spending of the excess benefits received as outlined above, found to be "unconscionable" by both the magistrate and the trial court, is one of the primary reasons she finds herself in this situation. Accordingly, having found no evidence in the record to support her position on appeal, we cannot find that the trial court's decision was unreasonable, arbitrary or unconscionable when it ordered Amy to repay Jeffery for his child support overpayment in monthly installments of $500.00. Amy's second assignment of error is overruled.

{¶43} For all these reasons, the judgment of the Hancock County Juvenile Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**